UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BRENT KING,

NO. CIV. S-08-2612 LKK/EFB

       Plaintiff,

   v.

O R D E R

NEIGHBORHOOD ASSISTANCE
CORPORATION OF AMERICA, aka
N.A.C.A.; BANK OF AMERICA
NA; REGIONAL TRUSTEE
SERVICES; and DOES 1-100,
inclusive,

       Defendants.

_____/

Plaintiff purchased a home and obtained a mortgage, which was subsequently foreclosed upon. He has brought suit against Bank of America, the bank with which he made his mortgage agreement, Neighborhood Assistance Corporation of America ("N.A.C.A."), a non-profit organization that facilitated the plaintiff's purchase of his home, and Regional Trustee Services, a company that conducted the foreclosure sale.

N.A.C.A. presently moves to dismiss plaintiff's causes of

1

1  action against it on the grounds that there is a binding

2  arbitration agreement that deprives the court of jurisdiction. Bank

3  of America and Regional Trustee Services move for dismissal of the

4  first and second causes of action pursuant to Federal Rule of Civil

5  Procedure 12(b)(6). The court grants both defendants' motions.

6                    **I. BACKGROUND AND FACTS**

7  **A.    Allegations of the First Amended Complaint[1]**

8       According to the First Amended Complaint, in September

9  2007, plaintiff entered into an agreement with N.A.C.A. whereby

10  N.A.C.A. provided various types of assistance to plaintiff as he

11  tried to prevent foreclosure of his home. N.A.C.A. also agreed

12  to allow plaintiff access to a fund for mortgage payment

13  advances. Through N.A.C.A., plaintiff also entered into a

14  contract with Bank of America, which set forth a payment

15  schedule governing plaintiff's mortgage payments. Plaintiff

16  alleges that N.A.C.A. represented to plaintiff that by entering

17  into this forbearance agreement, he would prevent his home from

18  being foreclosed upon although, according to plaintiff, N.A.C.A.

19  knew this to be untrue. Plaintiff also alleges that N.A.C.A.

20  _____

21       [1]All allegations are taken from the First Amended Complaint
and are taken as true for the purposes of the pending motions only.

22       Defendant N.A.C.A. requests the court take judicial notice of
23  decisions from other courts related to the enforceability of
    arbitration provisions that are purportedly identical to that at
24  issue here. Per Federal Rule of Evidence 201, the court must take
    judicial notice of these decisions, as the copies of them have been
25  provided by N.A.C.A. Nevertheless, given the absence of information
    in the decisions as to the contents of the arbitration agreements
26  at issue in those case, the court cannot conclude that the
    decisions are relevant to the instant dispute.

                                2

knew that by entering into the agreement, plaintiff would be unable to refinance his home later, thus losing the benefit of his equity in it.

In October 2007, plaintiff entered into a agreement with Bank of America to refinance the mortgage on the house. As part of this transaction, plaintiff signed a "Pre-Modification Agreement," which plaintiff now alleges was flawed by omitting several necessary pieces of information, including plaintiff's right to cancel and the interest rate and total sale price. Plaintiff alleges that these omissions were intentional.

In May 2008,[2] N.A.C.A. allegedly instructed Regional Trustee Services to sell plaintiff's house in a foreclosure sale. It also allegedly told plaintiff to make his May 28, 2009 mortgage payment, which plaintiff attempted to do but was refused by Bank of America based upon N.A.C.A.'s instructions. Plaintiff alleges that N.A.C.A.'s and Bank of America's actions were motivated by plaintiff's homosexuality. The plaintiff's home was sold on June 2, 2008 by Regional Trustee Services, though, according to plaintiff, without the proper foreclosure documents. Afterwards, plaintiff alleges that he suffered a severe asthma attack as a result of his distress from the sale.

Plaintiff has brought five causes of action against the defendants. In the first, he seeks to have the foreclosure vacated on the grounds that he was fraudulently induced into

---

[2]The plaintiff alleges that this conversation occurred on May 1, 2008 or on May 13, 2008. First Amended Complaint ¶¶ 30, 38.

1   entering the forbearance agreement with N.A.C.A. and Bank of

2   America. His second cause of action alleges that the wrongful

3   foreclosure constituted intentional infliction of emotional

4   distress. His third cause of action alleges that Bank of America

5   and N.A.C.A. violated plaintiff's due process rights by failing

6   to follow statutory requirements in foreclosing on his house.

7   His fourth cause of action seeks recision of the refinancing

8   agreement. His fifth cause of action alleges that defendants'

9   conduct violated California's Unfair Competition Law.

10  **B.    Plaintiff's Contract With N.A.C.A.**

11          N.A.C.A. contends that plaintiff has a duty to arbitrate

12  this dispute with N.A.C.A., which arises under the Membership

13  Agreement plaintiff entered into with N.A.C.A.

14          The Membership Agreement is a fifteen-page document signed

15  by plaintiff. See Declaration of Chris Selig in Support of

16  N.A.C.A.'s Mot. to Dismiss Exh. 1 ("Membership Agreement"). It

17  describes in plain language the relationship between plaintiff

18  and N.A.C.A. See id. N.A.C.A. is described as a non-profit

19  Massachusetts organization providing services to persons who may

20  be affected by predatory lending practices, for the purpose of

21  obtaining home loans and preventing home foreclosures for its

22  members. Id. at 1-6. Members of N.A.C.A. agree to abide by

23  N.A.C.A.'s policies and deadlines, participate in neighborhood

24  stabilization efforts, reside in the house they are financing

25  with N.A.C.A.'s assistance, and pay membership fees, among other

26  requirements. Id. at 7-8.

1      The agreement also contains an arbitration provision. <u>Id.</u>

2  at 14. It is in a separate section of the agreement titled,

3  "EXPRESS WAIVER OF LIABILITY AGAINST NACA, AND REQUIREMENT OF

4  ARBITRATION OF ANY AND ALL CLAIMS." <u>Id.</u> Like the headings of the

5  other sections of the agreement, this heading is underlined and

6  in bold font; unlike the other headings, it is in all capital

7  letters. <u>Id.</u>

8      In the first paragraph of this section, the agreement

9  recites that the member understands the risks associated with

10  "purchasing, refinancing, renovating and owning a home" and

11  agrees to hold harmless N.A.C.A. and its affiliates from any

12  claims arising from the member's "application, membership, or

13  participation in NACA." <u>Id.</u>

14      The second paragraph of this section provides for

15  arbitration. It states that "the Member agrees that should there

16  ever arise a controversy or claim with NACA" resulting from or

17  related to "the NACA Program, the purchase, financing,

18  refinancing, [or] renovation of the Member's home" or the

19  member's membership in or relationship with NACA, that claim

20  will be arbitrated. <u>Id.</u> It states that the "Member knowingly,

21  willingly, and after having time to consult with legal counsel

22  **waives the right to trial by jury**" and agrees to submit the

23  dispute to arbitration. <u>Id.</u> (emphasis in original). Arbitration

24  will be conducted by the American Arbitration Association "or

25  other arbitration service agreed to by the parties" and

26  arbitration would proceed "in accordance with its rules and

1  procedures." <u>Id.</u>

2       Arbitration would be conducted in Boston, Massachusetts, or

3  another "convenient" location chosen by N.A.C.A. upon a written

4  demand. <u>Id.</u> The venue provision is severable if found to be

5  unlawful. <u>Id.</u> The arbitrator's judgment is "final and binding on

6  all parties." <u>Id.</u> "Each party required to participate shall be

7  personally responsible for their share of the costs of

8  arbitration (or those required by the arbitration tribunal);

9  provided, however, that if NACA prevails in any such arbitration

10 [it] shall . . . be entitled to an award of its reasonable

11 attorneys fees and costs." <u>Id.</u> at 15-16.

12                 **II. STANDARDS**

13 **A.   Standard for Dismissal Pursuant to Federal Rule of Civil**

14      **Procedure 12(b)(6)**

15      On a motion to dismiss, the allegations of the complaint

16 must be accepted as true. <u>See</u> <u>Cruz v. Beto</u>, 405 U.S. 319, 322

17 (1972). The court is bound to give the plaintiff the benefit of

18 every reasonable inference to be drawn from the "well-pleaded"

19 allegations of the complaint. <u>See</u> <u>Retail Clerks Intern. Ass'n,</u>

20 <u>Local 1625, AFL-CIO v. Schermerhorn</u>, 373 U.S. 746, 753 n.6

21 (1963). Thus, the plaintiff need not necessarily plead a

22 particular fact if that fact is a reasonable inference from

23 facts properly alleged. <u>See</u> <u>id.</u>; <u>see</u> <u>also</u> <u>Wheeldin v. Wheeler</u>,

24 373 U.S. 647, 648 (1963) (inferring fact from allegations of

25 complaint).

26      In general, the complaint is construed favorably to the

1  pleader. <u>See</u> <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974). The

2  court may not dismiss the complaint if there is a reasonably

3  founded hope that the plaintiff may show a set of facts

4  consistent with the allegations. <u>Bell Atlantic Corp. v. Twombly</u>,

5  127 S.Ct. 1955, 1967-69 (2007). In spite of the deference the

6  court is bound to pay to the plaintiff's allegations, however,

7  it is not proper for the court to assume that "the [plaintiff]

8  can prove facts which [he or she] has not alleged, or that the

9  defendants have violated the . . . laws in ways that have not

10 been alleged." <u>Associated General Contractors of California,</u>

11 <u>Inc. v. California State Council of Carpenters</u>, 459 U.S. 519,

12 526 (1983).

13 **B.    Standard for Motion to Stay or Dismiss Pending Arbitration**

14     When confronted with a motion to stay or dismiss pending

15 arbitration, the court must first determine if a valid

16 arbitration agreement bars the plaintiffs claims. <u>Sparling v.</u>

17 <u>Hoffman Const. Co., Inc.</u>, 864 F.2d 635, 638 (9th Cir. 1988). If

18 that is the case, the court has discretion to either stay or

19 dismiss the case pending arbitration. <u>Id.</u>; 9 U.S.C. § 3. The

20 party seeking to enforce an arbitration agreement has the burden

21 to produce prima facie evidence of the existence of a valid

22 arbitration agreement. <u>Rosenthal v. Great Western Fin. Sec.</u>

23 <u>Corp.</u>, 14 Cal. 4th 394, 413-14 (1996). If it does so, the burden

24 then shifts to the party opposing arbitration to prove by

25 preponderance of the evidence that the arbitration agreement is

26 unenforceable. <u>Id.</u>

7

### III. ANALYSIS

Defendant N.A.C.A. has moved to dismiss plaintiff's action against it and compel arbitration. Plaintiff opposes the motion on the grounds that the membership agreement between the parties is unenforceable. Defendant Bank of America moves to dismiss certain of plaintiff's causes of action under Rule 12(b)(6), which plaintiff also opposes. The court considers each motion in turn.

**A.   Motion to Dismiss and Compel Arbitration**

The Federal Arbitration Act (FAA) governs arbitration agreements that concern interstate commerce. 9 U.S.C. § 2. The purpose of the FAA is to "place such agreements upon the same footing as other contracts," and thus represents Congress's intent to favor the enforceability of arbitration agreements. Volt Information Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior University, 489 U.S. 468, 474-75 (1989) (internal citations omitted). Generally courts apply state contract law in determining the enforceability of an arbitration agreement that falls within the ambit of the FAA. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995); Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1170 (9th Cir. 2003).

Here, the contract at issue concerns interstate commerce because the defendant's business operated in several states and because lending agreements generally implicate interstate commerce. See The Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56-58 (2003). Plaintiff does not dispute the applicability of

8

1  the FAA to the arbitration agreement at issue. Pl.'s Opp'n to
2  Mot. to Compel Arbitration at 4. Accordingly, the court turns to
3  California law in considering plaintiffs' arguments that the
4  agreement is unenforceable.

5      As described above, the arbitration provision N.A.C.A.
6  seeks to enforce was contained in a membership agreement between
7  it and the plaintiff. The plaintiff argues that the arbitration
8  provision is unenforceable because the entire contract is
9  unenforceable due to its substantive unconscionability. Under
10 California law, a contract is unconscionable where there are
11 elements of procedural and substantive unconscionability, though
12 each need not be present to the same degree. Ferguson v.
13 Countrywide Credit Indus., Inc., 298 F.3d 778, 783 (9th Cir.
14 2002); Armendariz v. Found. Health Psychcare Servs., Inc., 24
15 Cal. 4th 83, 114 (2000). Procedural unconscionability is
16 typically understood as one party lacking the opportunity to
17 meaningfully negotiate the terms of the contract and as certain
18 contract terms being hidden within the document. Ingle v.
19 Circuit City Stores, Inc., 328 F.3d 1165, 1171 (9th Cir. 2003)
20 (applying California law). A contract is substantively
21 unconscionable when its terms are so one-sided as to shock the
22 conscience. Ingle, 328 F.3d at 1172; Kinney v. United HealthCare
23 Serv., Inc., 70 Cal. App. 4th 1322, 1330 (Cal. Ct. App. 1999).

24     The crux of plaintiff's position is that through the "one-
25 sided Membership Agreement N.A.C.A. has reserved to itself all
26 the benefits of its contract and none of the risk" and therefore

9

1   the entire contract is substantively unconscionable. Pl.'s Opp'n

2   to Mot. to Compel Arbitration at 7, 9. Plaintiff rests his

3   argument on several provisions in the contract. First, plaintiff

4   observes that the contract required him to pay a membership fee,

5   but that N.A.C.A. retained absolute discretion to determine

6   whether to grant plaintiff initial or continued membership.

7   Membership Agreement at 1, 6, 9-10. N.A.C.A.'s decisions in this

8   regard are final and not subject to litigation or arbitration.

9   Id. at 7. Second, plaintiff notes that the agreement provides

10  that if the member receives assistance from N.A.C.A., the member

11  must promise to repay N.A.C.A. "on such terms as N.A.C.A. may

12  establish." Id. at 4. This agreement must be incorporated into

13  the member's mortgage application. Id. It would be enforced even

14  if not specifically executed as a lien or a promissory note. Id.

15  at 5. By the membership agreement, the member authorized

16  N.A.C.A. to monitor his mortgage payments. Id.

17      Third, the membership agreement states that the member's

18  dues are non-refundable and non-transferable, and that the

19  member may "from time to time" be required to pay additional

20  "special assessments," over and beyond the dues. Id. at 9.

21  Fourth, the plaintiff takes issue with the provision of the

22  contract that releases and holds harmless N.A.C.A. for "any and

23  all damages, liability, or claims of any kind resulting from the

24  Member's participation in the NACA program." Id. at 8; see also

25  id. at 14 (same). Finally, plaintiff asserts that it is

26  substantively unconscionable for the membership agreement to

10

1  provide that only N.A.C.A. would recover attorney's fees if it

2  prevailed at arbitration, without there being a comparable

3  provision for the member's benefit. See id. at 14-15.

4      The provisions to which the plaintiff directs the court's

5  attention are, in the least, troubling, and do suggest a

6  problematic one-sidedness in the membership agreement.

7  Plaintiff's argument fails, however, for two reasons.

8      First, plaintiff's argument addresses only the purported

9  substantive unconscionability of the membership agreement, in

10 that he takes issue with the alleged unfairness of the

11 contract's terms. In order for a contract to be unenforceable on

12 the basis of unconscionability, California law requires that the

13 party resistant to the application of the contract show that the

14 contract is both substantively and procedurally unconscionable.[3]

15 See, e.g., Armendariz, 24 Cal. 4th at 114; Stirlen v. Supercuts,

16 Inc., 51 Cal. App. 4th 1519, 1533 (1997). Even where there is

17 strong evidence of substantive unconscionability, there must be

18 at least some evidence of procedural unconscionability in order

19

20      [3]The plaintiff directs the court to California Civil Code §
   1695.13, which makes it unlawful for a person to take
21 "unconscionable advantage" of certain residential properties in
   foreclosure. Preliminarily, the plaintiff has not shown that this
22 section applies to the property at issue here. See Cal. Civ. Code
   § 1695.1 (defining a "residence in foreclosure" as used in §
23 1695.13). Moreover, plaintiff has not indicated that
   "unconscionable advantage" suggests a different definition of
24 unconscionability utilized by the California courts in other
   contexts, nor has the court found any such authority. Where a
25 statutory term is undefined and that term has a legal meaning, the
   term is interpreted to be consistent among similar statutes. See
26 Pac. Gas & Elec. Co. v. County of Stanislaus, 16 Cal. 4th 1143,
   1152 (1997).

1  for the contract to be unenforceable. <u>Stirlen</u>, 51 Cal. App. 4th

2  at 1531. Here, although plaintiff has tendered evidence that may

3  tend to demonstrate the membership agreement's substantive

4  unconscionability, he has tendered no evidence establishing that

5  it was procedurally unconscionable. This is fatal to his

6  argument.

7      More importantly, however, because the plaintiff seeks to

8  invalidate the entire contract, rather than just the arbitration

9  agreement contained within it, the question of the contract's

10 unconscionability must be determined by the arbitrator. <u>Buckeye</u>

11 <u>Check Cashing, Inc. v. Cardegna</u>, 546 U.S. 440, 444-46 (2006);

12 <u>Sanford v. Memberworks, Inc.</u>, 483 F.3d 956, 963 (9th Cir. 2007);

13 <u>Nagrampa v. MailCoups, Inc.</u>, 469 F.3d 1257, 1263-64 (9th Cir.

14 2006). The Supreme Court has explained that the FAA strictly

15 provides that a federal court must order arbitration unless "the

16 making of the agreement for arbitration or the failure to comply

17 therewith is . . . in issue." <u>Prima Paint Corp. v. Flood &</u>

18 <u>Conklin Mfg. Co.</u>, 388 U.S. 395, 403-404 (1967) citing 9 U.S.C. §

19 4. Accordingly, a federal court has jurisdiction to determine

20 whether an arbitration provision within a contract is

21 enforceable, but when confronted with a facially enforceable

22 arbitration agreement, the court does not have jurisdiction to

23 consider the validity or enforceability of the contract

24 generally. <u>Id.</u> The Court explained that this limitation comports

25 with the "unmistakably clear congressional purpose that the

26 arbitration procedure, when selected by parties to a contract,

1   be speedy and not subject to delay and obstruction in the

2   courts." Id. at 404.

3        Here, the plaintiff does not challenge the enforceability

4   of the arbitration agreement itself. Instead, plaintiff contends

5   that the entire Membership Agreement is unenforceable due to the

6   one-sidedness of its terms. He has not argued, let alone

7   convinced the court, that the elements of the arbitration

8   agreement within the contract are unenforceable. Because the

9   arbitration agreement appears on its face to be valid and to

10  apply to the dispute at issue, see A.T.&T. Tech., Inc. v.

11  Commc'n Workers of America, 475 U.S. 643, 650 (1986), the court

12  is bound to dismiss the plaintiff's action against N.A.C.A. and

13  order the parties to participate in arbitration. See Buckeye

14  Check Cashing, 546 U.S. at 444-46; Sanford, 483 F.3d at 963;

15  Nagrampa, 469 F.3d at 1263-64.

16  **B.   Motion to Dismiss Under Rule 12(b)(6)**

17       Defendants Bank of America and Regional Trustee Services

18  seek to dismiss plaintiff's first and second causes of action on

19  the grounds that they are inadequately pled under Federal Rule

20  of Civil Procedure 12(b)(6). The court grants this motion.

21       In his first cause of action, the plaintiff alleges that

22  all of the defendants committed fraud and discriminated against

23  him. First Amended Complaint ¶¶ 21-34. He alleges that N.A.C.A.

24  induced him to enter into a forbearance agreement with Bank of

25  America in September 2007. Id. ¶ 22. According to plaintiff, at

26  the time he entered this agreement, N.A.C.A. and Bank of America

13

1  knew that once the plaintiff entered into this agreement, he

2  would not be able to refinance his home, losing the equity he

3  had built. Id. ¶ 24. He also alleges that N.A.C.A. and Bank of

4  America refused to accept mortgage payments from him, and that

5  at the time he entered into the forbearance agreement, the

6  defendants did not disclose this possibility to plaintiff. Id.

7  ¶¶ 25, 31. He alleges that Bank of America was N.A.C.A.'s

8  "partner" in this inducement. Id. ¶ 26. He alleges that the

9  defendants' actions against him were based on plaintiff's

10 homosexuality and that he suffered financial loss and anxiety as

11 a result of defendants' wrongful foreclosure on his home. Id. ¶¶

12 28, 29, 33.

13     Plaintiff's second cause of action is based on the same

14 allegations, alleging that the wrongful foreclosure of his home

15 constituted intentional infliction of emotional distress. Id. ¶¶

16 35-43. His only allegation in this cause of action that

17 specifically relates to Bank of America's conduct is that the

18 bank refused to accept plaintiff's mortgage payments, knowing

19 that this would result in the foreclosure of plaintiff's home.

20 Id. ¶ 41. Specific to Regional Trustee Services, he alleges that

21 one of its employees ordered the foreclosure sale of plaintiff's

22 home without proper documents. Id. ¶ 38.

23     **1.   Rule 9 Pleading**

24     Defendants Bank of America and Regional Trustee Services

25 first seek to dismiss both causes of action on the grounds that,

26 to the extent that they allege fraud, they have been

14

1  inadequately pled. The court agrees. Under Federal Rule of Civil

2  Procedure 9(b), in alleging fraud the plaintiff "must state with

3  particularity the circumstances constituting fraud or mistake."

4  This requirement applies to causes of action for fraud that are

5  based in state law. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097,

6  1103 (9th Cir. 2003). In order to satisfy Rule 9, the

7  plaintiff's allegations must include "the who, what, when,

8  where, and how of the misconduct charged." Id. at 1106.

9      Here, plaintiff has not satisfied Rule 9 with respect to

10  allegations of fraud by Bank of America or Regional Trustee

11  Services. He alleges that he was induced into entering a

12  contract by certain omissions of material information and that,

13  subsequently, his home was wrongfully foreclosed upon. See First

14  Amended Complaint ¶¶ 21-43. However, he does not allege with any

15  specificity what Bank of America's or Regional Trustee Services'

16  involvement in this alleged deception was, aside from

17  conclusorily alleging that each was N.A.C.A.'s "partner" and

18  "agent." Id. ¶¶ 7, 26. This does not rise to the level of

19  specificity required by Rule 9 nor does it provide Bank of

20  America or Regional Trustee Services adequate notice upon which

21  they may defend against the claim. See Twombly, 127 S. Ct. at

22  1967-69; Vess, 317 F.3d at 1106.

23      **2.   Intentional Infliction of Emotional Distress**

24      Defendants Bank of America and Regional Trustee Services

25  also move to dismiss plaintiff's second cause of action on the

26  grounds that it does not allege conduct sufficiently extreme so

15

1  as to give rise to the cause of action. The court agrees.

2      Under California law, in order to make a prima facie claim

3  for intentional infliction of emotional distress, the plaintiff

4  must produce evidence of, *inter alia*, "extreme or outrageous

5  conduct by the defendant with the intention of causing, or with

6  reckless disregard of the probability of causing, emotional

7  distress." Cervantez v. J.C. Penney, Co., 24 Cal. 3d 579, 593

8  (1979). Outrageous conduct is that which is "so extreme as to

9  exceed all bounds of that usually tolerated in a civilized

10  community." Id.; Alcorn v. Anbro Eng'g, Inc., 2 Cal. 3d 493, 499

11  n. 5 (1970). An allegation of discrimination based on one's

12  characteristics as a member of a protected class alone does not

13  suffice to allege extreme or outrageous conduct for a claim of

14  intentional infliction of emotional distress. See Washington v.

15  Honeywell, Inc., 94 F.3d 654, 654 n. 1 (9th Cir. 1996)

16  (unpublished, applying California law); Woods v. Rainbow Acres,

17  No. B153844, 2002 WL 1980744, at *4 (Cal. Ct. App. Aug. 29,

18  2002). Although the defendant's position of trust or power over

19  the plaintiff may inform an intentional infliction of emotional

20  distress claim, Newby v. Alto Riviera Apartments, 60 Cal. App.

21  3d 288, 297 (1976), that alone does not suffice as the grounds

22  of the claim. Instead, the plaintiff must allege that the

23  defendant engaged in outrageous conduct within the context of

24  that relationship. See, e.g., Trerice v. Blue Cross of Cal., 209

25  Cal. App. 3d 878, 883-85 (1989) (intentional infliction of

26  emotional distress claim against plaintiff's employer failed

16

1 because plaintiff had not shown that the employer's conduct

2 surrounding plaintiff's termination was outrageous).

3     Here, the plaintiff has not alleged that Bank of America or

4 Regional Trustee Services engaged in any conduct that was

5 outrageous, sufficient to give rise to the tort or intentional

6 infliction of emotional distress. He alleges only that these two

7 defendants were somehow involved in the improper foreclosure on

8 his home and that this was motivated by discriminatory animus.

9 Without more, plaintiff's claim fails to allege facts sufficient

10 to state a cause of action. See <u>Trerice</u>, 209 Cal. App. 3d at

11 883-85; <u>Alcorn</u>, 2 Cal. 3d at 499 n. 5. Plaintiff's second cause

12 of action is dismissed with leave to amend.

13                         **IV. CONCLUSION**

14     For the reasons stated herein, the court ORDERS as follows:

15     1.    Defendant Neighborhood Assistance Corporation of

16           America's motion to dismiss is GRANTED. Neighborhood

17           Assistance Corporation of America is DISMISSED from

18           this action. Plaintiff and Neighborhood Assistance

19           Corporation of America are ORDERED to participate in

20           arbitration in accordance with the terms set forth in

21           the parties' Membership Agreement, as described

22           herein.

23     2.    Defendants Bank of America and Regional Trustee

24           Services' motion to dismiss is GRANTED, with leave to

25           amend. Plaintiff is granted thirty (30) days from the

26           date of this order to file an amended complaint.

1    IT IS SO ORDERED.

2    DATED: January 27, 2009.

4

5    _____
     LAWRENCE K. KARLTON
6    SENIOR JUDGE
     UNITED STATES DISTRICT COURT

18